[Crim. No. 27600. Second Dist., Div. One. Oct. 13, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES ALFRED HOLLY, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Barry R. Levy, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, John M. Moore, Chief Deputy Public Defender, Harold E. Shabo, Holley Graham and Martin Stein, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**LILLIE, Acting P. J.**—By information defendant was charged in count I with possession for sale of heroin (§ 11351, Health & Saf. Code) and in count II with using and being under the influence of heroin (§ 11550, Health & Saf. Code). Evidence was taken at a joint hearing on a section 1538.5 motion and trial; the motion was denied. By stipulation the cause was submitted on this evidence. Motion for acquittal (§ 1118, Pen. Code) on the ground of insufficiency of evidence to support possession for sale was granted on count I after amendment to the information (by stipulation) adding count III charging possession of heroin (§ 11350, Health & Saf. Code); the motion was denied as to counts II and III, and defendant was found guilty on each count.

On June 23, 1975, at the time set for pronouncement of judgment and sentence, after denial of motion for new trial, defendant moved to invoke the provisions of section 654, Penal Code. After a substantial and primarily factual argument, the trial court found "654 does apply to this situation." Thus, the court disposed of count III (possession of heroin) first; it suspended the proceedings and granted probation for a period of four years on certain conditions one of which was that defendant spend 120 days in the county jail, execution of said sentence to be stayed "until and if defendant is presented on violation matters involving facts occurring subsequent to 3/21/75." On count II (using and being under the influence of heroin) the court pronounced judgment; it sentenced

defendant to 90 days in the county jail then ordered the sentence suspended and stayed pending any appeal and during service of any sentence the Adult Authority should pronounce on count III, said stay to become permanent at the completion of such sentence.

The People appeal "from the order of June 23, 1975, as to the sentence imposed on said defendant"; and appellant's opening brief recites "This is an appeal by the People, pursuant to Penal Code section 1238(a)(5), from the order of June 23, 1975 . . . as to the sentence imposed on the defendant." Appellant concedes that if section 654, Penal Code applies, the trial court took the proper procedure to implement the prohibition against multiple punishment, but disputes the trial court's finding that Penal Code section 654 is applicable.

At the outset, respondent challenges the People's right to appeal on the theory that they have appealed from the "sentence," and argues that under section 1237, subdivision 1, Penal Code a sentence is deemed to be a final judgment and only a defendant may appeal therefrom, and nothing in section 1238, Penal Code authorizes an appeal from a judgment by the People. Although the People have recited in their notice of appeal that they appeal from the June 23, 1975, order "as to the sentence," and normally an appeal from a sentence is the same as one from the judgment (*People* v. *Spencer,* 71 Cal.2d 933, 934, fn. 1 [80 Cal.Rptr. 99, 458 P.2d 43]), it is clear in the case at bench that this is an appeal from "[a]n order made after judgment, affecting the substantial rights of the people." (§ 1238, subd. (a) (5), Pen. Code.) On count II, the court first pronounced judgment and sentence, then made an order suspending the sentence and staying the same pending an appeal from and during service of any sentence on count III, the stay to become permanent upon completion of such sentence. It is from this order implementing the prohibition against multiple punishment in accord with the finding that section 654, Penal Code applies, made *after* pronouncement of judgment and sentence, that this appeal is taken. The order is one "affecting the substantial rights of the people" (§ 1238, subd. (a) (5), Pen. Code) in that it effectively relieves defendant, convicted of a violation of section 11550, Health and Safety Code,[1] of the punishment

---

[1]Section 11550, Health and Safety Code provides: "Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. The court may place a person convicted hereunder on probation for a period of not to exceed five years and shall in all cases in which probation is granted require as a condition thereof that such person be confined in the county jail for at least 90 days. In no event does the court

prescribed therein.[2] The order is analogous to an order suspending sentence and granting probation made after pronouncement of judgment and sentence from which the People have a right to appeal. (*People* v. *Villegas,* 14 Cal.App.3d 700, 703, fn. 2 [92 Cal.Rptr. 663];[3] *People* v. *Beasley,* 5 Cal.App.3d 617, 630 [85 Cal.Rptr. 501];[4] *People* v. *Orrante,* 201 Cal.App.2d 553, 556 [20 Cal.Rptr. 480]; *People* v. *Superior Court (Leslie)* 118 Cal.App.2d 700, 703 [258 P.2d 1087].)[5]

■ The sole issue raised by appellant is whether the trial court erred in finding that section 654, Penal Code[6] proscribing multiple punishment is applicable.

■ "By its terms, the section forbids multiple punishment for the commission of a single 'act' or 'omission.' The 'act' necessary to invoke section 654 need not be an act in the ordinary sense that it is a separate, identifiable, physical incident, but may be 'a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and

have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail."

[2] In light of the penalty prescribed in section 11550, it also appears, under the authority of *People* v. *Villegas,* 14 Cal.App.3d 700, 703 [92 Cal.Rptr. 663]; *People* v. *Thatcher,* 255 Cal.App.2d 830, 831-832 [63 Cal.Rptr. 492] and *People* v. *Orrante,* 201 Cal.App.2d 553, 556 [20 Cal.Rptr. 480], that the order is appealable as "[a]n order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed." (§ 1238, subd. (a) (6).)

[3] "There is no question that the People would have an appeal had the trial court imposed sentence, but suspended the execution thereof before granting probation. The order granting probation would then be '[a]n order made after judgment, affecting the substantial rights of the people.' (Pen. Code, § 1238, subd. (5); *People* v. *Superior Court,* 118 Cal.App.2d 700, 703 [258 P.2d 1087].)" (*People* v. *Villegas, supra.*)

[4] "Such an order [granting probation] is appealable. Penal Code section 1238 designates the decisions from which the People have a right of appeal. Subdivision 5 of that section authorizes such an appeal 'From an order made after judgment, affecting the substantial rights of the people.' It has been held that an order granting probation, as in Morris' case, *after* pronouncement of judgment, imposition of sentence, and suspension of sentence is appealable by the People as such 'an order made after judgment' [citations]." (*People* v. *Beasley, supra.*)

[5] The thrust of the People's appeal is to the order made on count II implementing the prohibition against multiple punishment, thus we do not deem it necessary to discuss whether the order made as to count III, on which no judgment was pronounced, is appealable.

[6] Penal Code section 654 provides in pertinent part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' (*Id.,* p. 376.)" (*In re Adams,* 14 Cal.3d 629, 634 [122 Cal.Rptr. 73, 536 P.2d 473]; *People* v. *Bauer,* 1 Cal.3d 368, 375-376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

The judge who found section 654, Penal Code to be applicable herein is the same judge who heard the evidence and acquitted defendant on count I and found him guilty on counts II and III. On defendant's motion to invoke section 654, the arguments of counsel were largely of a factual nature, and the court's ruling that the statute "does apply to this situation" necessarily is predicated on a determination that the acts of which defendant was convicted constituted an indivisible course of conduct and that the several offenses were incident to only one objective, which is primarily a factual determination based on implied findings concerning defendant's intent and objective in committing the acts. (*People* v. *Ferguson,* 1 Cal.App.3d 68, 74-75 [81 Cal.Rptr. 418].) Thus we view the evidence in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Sedeno,* 10 Cal.3d 703, 712 [112 Cal.Rptr. 1, 518 P.2d 913].)

Around 1 p.m. the police arrested three persons for being under the influence of heroin, one of whom the officers observed exit apartment 5. Officer Todd then went to the open door of apartment 5, saw defendant inside and ordered him to exit; Officer Kelley observed that defendant's speech was slow and hesitant, his eyelids were drooping, he had dried saliva in each corner of his mouth and the pupils of his eyes were pinpointed. After giving defendant a pupil reaction test, Officer Kelley determined that defendant was under the influence of heroin, and arrested him; search of defendant revealed 16 balloons of heroin—15 in one pocket and 1 in another—each balloon contained less than half a gram of heroin although the normal balloon contains a half a gram; the gross weight of the 16 balloons was 2.12 grams, and the heroin had a street value of $160; no money was found on defendant's person. It was Officer Kelley's opinion "[i]n regards to fixes, some people use a half a balloon, some people use a full balloon." Upon arrival at the jail, Officer Kelley examined defendant's arms and observed twenty-two puncture wounds over veins; three of the wounds were of recent origin and one was still oozing a clear liquid and blood where a scab had not yet formed; the last

wound indicated a recent injection; in his opinion defendant was "a moderate user of heroin."

At trial, Officer Todd was asked by defense counsel to observe defendant's arms; he did so and noted an "old track" (a series of puncture wounds along a vein area) on his arm and what appeared to be a collapsed vein; asked if the "track" along the arm would "indicate excessive usage" Officer Todd testified "Yes, sir, it would to me"; asked over what period of time defendant had been using, Officer Todd answered "I would say a track like that would probably be developed over maybe a year to a two-year period."

In challenging the trial court's finding, appellant advances an argument based primarily on facts from which we are asked to draw inferences contrary to those drawn by the trial judge.[7] Appellant argues that the fact that defendant "possessed on his person 16 balloons of heroin suggests that the defendant's possession of them may have been motivated by other than the single intent and objective to then use them to be under the influence." This may be true but the trial court hearing the evidence found to the contrary. ■ When the evidence reasonably justifies the findings of the trier of fact, reversal is not warranted merely because the circumstances may be reasonably reconciled otherwise. (*People* v. *Beamon,* 8 Cal.3d 625, 635 [105 Cal.Rptr. 681, 504 P.2d 905].)

■ "Since the divisibility of the transaction depends in part upon the intent of the defendant, a factual issue is presented. It is the function of the trial court, after seeing and hearing the witnesses, to determine this factual matter which controls the number of sentences to to be imposed. A reviewing court is not the place to try facts." (*People* v. *Scott,* 247 Cal.App.2d 371, 375-376 [55 Cal.Rptr. 525]; *People* v. *Williams,* 244 Cal.App.2d 658, 663 [53 Cal.Rptr. 392]; *People* v. *Ferguson,* 1 Cal.App.3d 68, 75 [81 Cal.Rptr. 418].) The "determination will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People* v. *Ferguson,* 1 Cal.App.3d 68, 75.) ■ There is substantial evidence in the record to support the implied finding that defendant's possession of 2.12 grams of heroin was incident to his objective of being under the

[7]In particular appellant asks us to draw inferences "that the defendant . . . was possessing the 16 balloons of heroin with the intent and objective to use them in some manner other than by imminent injection into his own system. One who possesses 16 balloons of heroin, although the evidence may be insufficient to convict him of possession for sale . . . may yet traffic in that heroin, even if he does not intend to 'sell' them. He might give them away or trade them."

influence of heroin. Defendant was not arrested with or in the same place as the other three persons and was not wandering the streets, he was in his own home; there is no evidence of a sale or transfer of heroin prior to his arrest and no money was found in defendant's possession; he was under the influence of heroin when the 16 balloons of heroin were found on his person; among 22 needle marks on defendant's arm, 3 were of recent origin and 1 was a fresh wound still oozing clear liquid and blood indicating a recent injection; and the "track" on defendant's arm was such as "would probably be developed over maybe a year to a two-year period," and the condition of his arm "indicated excessive usage." The foregoing supports a finding that defendant was addicted to the use of heroin, was a heavy user and had been using heroin for a two-year period. Each balloon contained less than a half a gram of heroin; the total gram weight in the balloons was 2.12 grams, the street value of which was $160; and according to Officer Kelley "some people use a half balloon, some people use a full balloon" in taking a "fix." From this the inference that the quantity could be consumed by an "excessive us[er]" in a relatively short time, is reasonable. These factual determinations support the conclusion that the heroin found in defendant's pocket was possessed only for his own consumption and its use was necessary to satisfy his addiction and to his objective of being under the influence of heroin, and that defendant's possession of the heroin was incident to his objective of being under the influence; and the acts of which defendant was convicted constituted an indivisible course of conduct. Obviously for the purpose of section 654, as well as for a determination of guilt or innocence on count I, the trial court rejected any opinion evidence that the heroin was possessed for sale or transfer.[8]

Defendant's possession of heroin was simultaneous with his condition of being under the influence of heroin, and although we do not dispute that were 2.12 grams injected at one time, in all probability the result would be deadly, we do not read the cases as requiring a showing that under the circumstances here defendant must be able to *immediately* consume all of the narcotic before the court can find that the possession and his use and being under the influence[9] constitute an indivisible

[8]In applying "the intent and objective test" the court said "A person could possess it for a lot of purposes not reflected in the—in the court's finding or in the evidence. It certainly is conceded that one of those purposes, however, could be for his own use."

[9]The situation is analogous to that under which a defendant is convicted of driving while under the influence of intoxicating liquor (§ 23102, Veh. Code) and having in the vehicle with him an open bottle of whiskey (§ 23122, Veh. Code). The circumstances of these two offenses well might be sufficient to support the inference that the possession of

course of conduct. In discussing the strained rationale that a test dependent on simultaneity would engender, as urged by the Attorney General in *In re Hayes,* 70 Cal.2d 604 [75 Cal.Rptr. 790, 451 P.2d 430], the court said at page 609, footnote 8: "As stated in *People* v. *Pater* (1968) *supra,* 267 Cal.App.2d 921, 926 [73 Cal.Rptr. 823], a 'necessarily included offense' case, 'Neither clocks, calendars nor county boundaries convert one continuing course of conduct into a series of criminal acts.' " Absent any evidence concerning a time span over which a heavy user would consume 2.12 grams of heroin to sustain his condition of being under the influence, the inference drawn by the trial court is reasonable. And there is no evidence to support an argument that the number of balloons found on defendant, an addict and excessive user, contained a quantity of heroin which exceeded his need for personal use within a reasonable time.[10] (See dictum in *People* v. *Gomez,* 229 Cal.App.2d 781, 784 [40 Cal.Rptr. 616].)

█  We are aware that where the question is whether a course of conduct constitutes a divisible or indivisible transaction, each case must be resolved on its own facts (*People* v. *Camodeca,* 52 Cal.2d 142, 148 [338 P.2d 903]), general principles applicable to one type of case may not apply to another (*In re Adams,* 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473]) and " 'there can be no universal construction which directs the proper application of section 654 in every instance' " (*People* v. *Beamon,* 8 Cal.3d 625, 636 [105 Cal.Rptr. 681, 504 P.2d 905]), nevertheless it is our view that controlling precedent vindicates the determination of the trial court as a matter of law (*In re McGrew,* 66 Cal.2d 685, 688 [58 Cal.Rptr. 561, 427 P.2d 161] [two counts of rape, violation of 288a, Pen. Code, and burglary]; *In re Johnson,* 65 Cal.2d 393, 394-395 [54 Cal.Rptr. 873, 420 P.2d 393] [two installment deliveries of heroin over a two-hour period, for one sale]; *People* v. *Quinn,* 61 Cal.2d 551, 556 [39 Cal.Rptr. 393, 393 P.2d 705] [theft and possession of narcotics, theft of money and robbery of a pharmacy in which narcotics and money were taken]; *People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501] [transportation, furnishing and

the whiskey was incident to defendant's objective of being under the influence of intoxicating liquor.

[10]Any analogy to *People* v. *Fusaro,* 18 Cal.App.3d 877 [96 Cal.Rptr. 368] is superficial. Defendant had been convicted of sale of amphetamines on October 30 and November 13, and possession for sale of amphetamines on November 19. The court held that the sales were separate criminal acts each with its own objective of sale to a different individual; and that the possession on November 19 was not a mere incident to the two sales; stating at page 894: "Where, as here, each sale consumes only part of his inventory he may be punished separately for the possession of his unsold stock in trade. [Citations.]"

possession of heroin]; *People* v. *Venegas,* 10 Cal.App.3d 814, 821 [89 Cal.Rptr. 103] [assault with a deadly weapon with intent to commit murder and possession of a firearm by convicted felon]; *People* v. *Johnson,* 5 Cal.App.3d 844, 847 [85 Cal.Rptr. 238] [possession and transportation of amphetamines]; *People* v. *Branch,* 119 Cal.App.2d 490, 496 [260 P.2d 27] [possession of marijuana incidental to its sale or offer to sell]; see also *In re Adams,* 14 Cal.3d 629, 635 [122 Cal.Rptr. 73, 536 P.2d 473]).

The order is affirmed.

Thompson, J., concurred.

**HANSON, J.**—Concurring and Dissenting.—I concur with that portion of the majority opinion which holds that the People had a right to appeal from the order finding section 654 applies in that it is an appeal from "[a]n order made after judgment, affecting the substantial rights of the people." (Pen. Code, § 1238, subd. (a) (5).)

I dissent with that portion of the majority opinion which holds that section 654 applies to the case at bench. In my view the decision of the trial court that section 654 applies and the majority opinion affirming that decision run counter to *both* the "legalities" of the case and the "realities" of the disastrously mushrooming drug scene which California citizens increasingly demand that its public servants, in all branches of government, including the judiciary, bring under control.

*As to the "legalities" of the instant case:*

The majority opinion concludes there is substantial evidence to support the trial court's finding that an indivisible course of conduct existed in the instant case and the single intent and objective of defendant in possession of the 16 balloons of heroin was for his personal use to keep under the influence of heroin.

In my view the substantial evidence rule should not be used as a shoehorn to push defendant's foot into the section 654 shoe. It won't fit. My reasons are twofold.

*First,* the attempted application of the "single intent and objective —indivisible course of conduct" test of section 654 to the heroin

possession (Health & Saf. Code, § 11350) and under the influence (Health & Saf. Code, § 11550) situation is illogical and inappropriate.

If the defendant intentionally injected all 16 balloons at once it would undoubtedly be a lethal dose. He would have "murdered" himself and although having effectively removed himself from the jurisdiction of the court, it would constitute a separate offense.

If he used 1 balloon a day, he would be committing 16 separate violations of section 11550, each carrying a minimum mandatory sentence of 90 days in custody for a total of 4 years in jail.

Thus, it appears to me it would be patently inconsistent and illogical to allow defendant the benefit of the "single intent and objective—indivisible course of conduct" argument of section 654 which would give him a free "fix" by allowing him to escape paying the statutory penalty for the *single* count of being under the influence for which he was arrested, charged and convicted when theoretically the "single intent and objective —indivisible course of conduct" of keeping under the influence with the heroin he had in his veins and on his person could either cause his death or require four years of mandatory incarceration under section 11550.

*Second,* in my view the results of applying section 654 to the instant case would ignore and do violence to the *basic purpose* of section 654.

I focus on the basic purpose of section 654 as it pertains to the case at bench. "[S]ection [654] is designed to prohibit *dual* punishment by judicial action" (*In re Gullatt* (1968) 69 Cal.2d 395, 398 [71 Cal.Rptr. 676, 445 P.2d 292] [italics added]) and in my view was not intended, as present here, to operate to permit a defendant convicted of section 11550 to escape the mandatory punishment provisions of that section.

Section 11550 provides in pertinent part: "Any person convicted of violating any provision of this section is guilty of a misdemeanor and shall be sentenced to serve a term of not less than 90 days nor more than one year in the county jail. The court may place a person convicted hereunder on probation for a period not to exceed five years and shall in all cases in which probation is granted require as a condition thereof that such person be confined in the county jail for at least 90 days. *In no event does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail.*" (Italics added.)

I construe the plain language of the legislative mandate in section 11550 to mean what it says: "In *no event* does the court have the power to absolve a person who violates this section from the obligation of spending at least 90 days in confinement in the county jail." The fact that defendant had 16 balloons on his person is an "event." The fact that a section 654 motion was made is an "event." The Legislature unequivocably and emphatically said that in "*no* event" does the court have the power to absolve a person of the 90-day confinement obligation. Here the defendant was convicted of violation of section 11550 and by the attempted application of section 654 the court "absolved" defendant of the 90-day minimum confinement obligation which, in my opinion, it did not have the "power" to do.

*As to the "realities" of the drug problem:*

All reports indicate drug abuse in the United States continues on the upswing, running virtually out of control and spreading to all levels of society. The cost of drug abuse is staggering, equivalent in my opinion in loss of life and property to a continuing earthquake with a peak reading of .9 on the Richter scale. More than 5,000 Americans die each year from drug overdose. The total cost to Americans is up to $17 billion a year. A large percentage of the absence of Americans' personal safety on the streets, in their businesses, and homes is directly attributed to the drug problem. In fact, it is estimated that as much as one-half of all robberies, muggings and burglaries are committed by drug addicts to support their habits.[1] Official reports estimate there are at least 60,000 heroin addicts in Los Angeles County alone and indicate that Southern California is now a center for heroin and cocaine. In 1975 the police seized 177 pounds of heroin in Los Angeles compared to 10 pounds seized in 1963.[2]

.

Hans W. Mattick of the Center for Research in Criminal Justice in Chicago somewhat indelicately but nevertheless accurately likened the

---

[1]One relatively recent set of statistics of a superior court judge sitting in a criminal court reflects that about 50 percent of all felonies handled involved narcotic or dangerous drug cases (sale, possession for sale, or possession); 25 percent of the felonies were to varying degrees drug related (murders, assaults, robberies, or burglaries) while only 25 percent were nondrug related.

[2]See *Drugs: A $17-Billion-A-Year Habit that U.S. Can't Break* (May 10, 1976) U.S. News & World Report.

criminal justice system to a vacuum cleaner: the police—the mouth and suction power; the courts—the hose; and the prisons—the bag.[3]

Here, the police (paid by public funds) "swept-up" the defendant in its "vacuum" and the case entered the court system—the "hose."

In the court—the "hose"—the prosecuting attorney(s) (paid by public funds) filed the information in the superior court charging defendant with the violations hereinbefore described and prosecuted the case. The court (paid by public funds) in a courthouse (built and staffed by public funds) appointed a public defender (paid for by public funds) to represent the defendant. Following conviction of violation of sections 11350 and 11550 the court requested and received a probation report from the probation department (staffed and paid for by public funds) which recommended probation. At time of sentencing by the court the defendant did not go to state prison for his conviction of Health and Safety Code section 11350, a felony,[4] he did not even go to county jail for the minimum 90-day period mandated by section 11550 by reason of the application of section 654—he was placed on probation and went to COLLEGE.[5]

In *People* v. *Fusaro* (1971) 18 Cal.App.3d 877 [96 Cal.Rptr. 368] (involving the applicability of § 654 in the sale and possession situation) the court said at page 894: "Where, as here, each sale consumes only part of his inventory he may be punished separately for the possession of his unsold stock in trade." In view of the opinions hereinbefore expressed and paraphrasing the *Fusaro* language above, I would hold in the instant case (involving the applicability of § 654 in the possession and under the influence situation) that: Where, as here, each "*fix*" consumes only part of his inventory he should be punished separately for the possession of his "*unused*" stock.

---

[3] See *Revolving Door Justice: Why Criminals Go Free* (May 10, 1976) U.S. News & World Report.

[4] Health and Safety Code section 11350 (possession of heroin) provides that a person so convicted "shall be punished by imprisonment in the state prison for a period of not less than two years or more than 10 years . . ." and if previously convicted he "shall be imprisoned in the state prison for a period of not less than five years or more than 20 years . . ." and if previously convicted two or more times "he shall be imprisoned in the state prison for a period of 15 years to life . . . ."

[5] Pursuant to Rules of Court, rule 12(a), I have augmented the record on appeal by ordering up the superior court file.

Accordingly, by reason of the foregoing I would reverse the trial court's judgment that section 654 applies to the instant case and remand the case to the trial court to resentence defendant separately on his convictions for violation of Health and Safety Code sections 11350 and 11550 within the parameters provided by law.

A petition for a rehearing was denied November 8, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 9, 1976.