[Crim. No. 3750. Fifth Dist. May 13, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEX ARELLANO MAESE, Defendant and Appellant.

COUNSEL

John M. Hanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Mark E. Cutler, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN (G. A.), P. J.**—Appellant, Alex Arellano Maese, was convicted by a jury of violating Health and Safety Code sections 11350 (possession of heroin) and 11364 (possession of narcotic paraphernalia). He pled guilty to being under the influence of heroin (Health & Saf. Code, § 11550). He appeals from the judgment.

FACTS

On October 5, 1977, certain Kern County Sheriff's deputies went to 527 Oregon Street, Bakersfield, to serve a search warrant for narcotics. The officers arrived at approximately 7:30 p.m.

Marie Chavarria managed the property and rented it to David and Ramona Rodriguez. The Rodriguezes rented the house from September 1975 until September 16, 1977. The Rodriguezes actually moved out of the house in the middle of October, owing two weeks rent. Thus the incident here in question occurred a week or 10 days before the

Rodriguezes moved out. Appellant is the uncle of David Rodriguez. Ms. Chavarria testified appellant had been staying at the Oregon Street house and had been "in and out, [of the house] let's say from the beginning, since they rented the place." Appellant had been under intermittent surveillance by the police for about three to four weeks prior to his arrest on October 5, 1977. He had been observed entering the premises. Appellant never gave rent moneys to the manager.

When the sheriff's deputies arrived at the Oregon Street house all were dressed in plain clothes. Officer Olivarez approached the back door and knocked on it. He was asked his identity and Olivarez replied it was "Bob Lopez." The door was not opened. Instead, Olivarez heard a noise which was described by him as "a clicking sound as if a round was being chambered into an automatic weapon."

After hearing the noise Olivarez returned to the alley where two other officers were waiting. He told them what he had heard. The three officers then went back to the door, knocked, and advised appellant who they were and why they were there. Immediately after Olivarez stated "police officers," movements were heard in the house. It sounded as though the occupants were moving away from the door. After waiting a few moments, the door was kicked down, and the officers entered.

After entering the officers searched the premises. Appellant was the only person in the house. He was apprehended between the living room and bedroom. No one else was in the house. Detective Head ordered appellant to lie down on the floor. The request was repeated two or three times. After appellant was on the floor a pat search was performed, and thereafter appellant was handcuffed and led to the couch. Detective Head searched the kitchen area of the house. A prophylactic containing a brown substance, a bottle cap containing a brown liquid, a hypodermic syringe containing a brown liquid, a black sock and some burned matches were found on the kitchen table. A spoon and a funnel were found in a cupboard. The spoon was charred on the bottom and contained a brown substance. A letter addressed to appellant, from the Kern County welfare office, was found in the house. The letter was postmarked September 1977. Letters to David and Ramona Rodriguez were also found.

The bottle cap, syringe, prophylactic, spoon and funnel all contained heroin. The prophylactic contained 13.676 grams of heroin (almost one-half ounce).

One of appellant's crutches was found in the kitchen and one in the living room. He admitted knowing of the presence of narcotics in the kitchen.

When the items containing the heroin were seized by Detective Head, the officer made no attempt to preserve any fingerprints which may have been on the items. No other officer made any such attempt. Officer Head did not believe the items would have produced any usable prints. Head admitted the items could have been picked up so as not to ruin any prints which may have been on the items. Such a procedure was not followed.

A fingerprint expert testified that the spoon, syringe, and funnel could conceivably be fingerprinted. The prophylactic could theoretically be fingerprinted, but as the expert said: "I have dusted several hundred balloons. I have, in all my experience lifted one fingerprint off a balloon that was usable."

At the time of his arrest appellant was under the influence of heroin. Appellant admitted being in the kitchen about 10 minutes before the police arrived. He saw the prophylactic, syringe, and bottle cap. He knew they contained narcotics, probably heroin. Appellant took the stand and denied being a resident of the house and denied being in possession of the narcotics or paraphernalia.

## DISCUSSION

### SUBSTANTIAL EVIDENCE

Only one element of possession of heroin is challenged; that is, that appellant exercised dominion and control over the substance.[1] He argues, that the proof herein only shows opportunity of access, which will not support a finding of unlawful possession. The stated principle is correct. (*People* v. *Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].)

However, it is settled that a defendant need not have exclusive control over the narcotic. (*People* v. *White* (1970) 11 Cal.App.3d 390, 394,

---

[1]Appellant notes that his argument regarding sufficiency of the evidence applies equally to his conviction for possession of narcotic paraphernalia. If the evidence is insufficient for the possession of heroin charge it was also insufficient for the paraphernalia charge. However, the converse would also appear to be true. Therefore, there will be no separate discussion of the paraphernalia charge.

396 [89 Cal.Rptr. 761]; *People* v. *Redrick, supra,* 55 Cal.2d at p. 287.) It is also settled that circumstantial evidence and inferences drawn therefrom are sufficient support of any of the required elements of possession. (*People* v. *White, supra,* 11 Cal.App.3d at p. 395.)

Appellant's arguments in this regard are primarily directed toward rearguing the facts, ignoring the substantial evidence rule (*People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]) by which we are bound. Following the precepts contained in the *Redmond* case, we must view the evidence in the light most favorable to respondent, including inferences the jury could have reasonably drawn therefrom.

Here the evidence showed appellant was the only occupant of the house at the time of his arrest. Appellant admitted being under the influence of heroin at the time of his arrest. Evidence was introduced showing appellant lived in the house. (Admittedly, there were other tenants of the house.) Appellant did not open the door after the police announced their presence and purpose and, in fact, was heard "shuffling" away from the door.

These circumstances, especially given appellant's admitted knowledge of the drug's presence and character, are sufficient evidence to support the jury's conclusion appellant knowingly possessed heroin. (See *People* v. *White, supra,* 11 Cal.App.3d 390; *People* v. *Redrick, supra,* 55 Cal.2d 282; *People* v. *Showers* (1968) 68 Cal.2d 639 [68 Cal.Rptr. 459, 440 P.2d 939].)

Appellant cites a number of cases wherein convictions for possession of drugs were reversed. As respondent notes, those cases are distinguishable. In the instant case there was evidence which supports a finding of knowing possession. The cases appellant cites lacked evidence that the defendant either knew of or had control over the drugs. (*People* v. *Redrick, supra,* 55 Cal.2d at pp. 286-287.) The evidence was sufficient.

### EVIDENCE OF APPELLANT BEING UNDER THE INFLUENCE OF HEROIN

■ Appellant argues the trial court improperly admitted evidence on rebuttal that he was under the influence of heroin at the time of the arrest. The argument has no merit. Before the admission of this testimony appellant himself pled guilty to being under the influence of heroin, and

the jury was so advised. If there was any error in admitting the testimony on rebuttal that appellant was under the influence of heroin the evidence was cumulative and harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## MISCONDUCT OF PROSECUTOR

■ Appellant contends that it was prosecutorial misconduct requiring reversal for the prosecutor to have stated in his opening statement that the bottle cap found in the house was warm because no testimony or evidence was presented on the point.

During the opening statement the prosecutor stated: "I believe the evidence will show at the time the items were seized . . . that the bottle cap was warm." The prosecutor also informed the jury that comments and arguments by counsel were not evidence.

After the initial jury instruction the jury requested the judge review the evidence on the above point. The judge said: "There is no testimony about whether the bottle cap was warm or cold . . . ."

If in fact the bottle cap was warm to the touch when appellant was arrested it would tend to prove that appellant used the matches to heat the bottle cap, thus leading to the conclusion that appellant possessed the contraband.

Appellant initially raised this point below in his motion for a new trial. Until recently it has been held that in order to complain of this type error on appeal: "Such misconduct must be assigned as error at trial with a request that the jury be instructed to disregard its effect, unless (1) in a closely balanced case presenting grave doubt as to the defendant's guilt the misconduct contributed materially to the verdict or (2) the harmful results could not have been obviated by a timely admonition to the jury." (*People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 723 [135 Cal.Rptr. 392, 557 P.2d 976].)

However, the above formulation is no longer completely correct. The Supreme Court in *People* v. *Green* (1980) 27 Cal.3d 1, 34 [164 Cal. Rptr. 1, 609 P.2d 468], upon closer examination, has concluded that the second category mentioned in *Chi Ko Wong* is the only bona fide exception to the rule that alleged misconduct must be objected to at trial and

an admonition to the jury requested or be deemed waived. "[T]he initial question to be decided in all cases in which a defendant complains of prosecutorial misconduct for the first time on appeal is whether a timely objection and admonition would have cured the harm. If it would, the contention must be rejected [citation]; if it would not, the court must then and only then reach the issue whether on the whole record the harm resulted in a miscarriage of justice within the meaning of the Constitution." (*People* v. *Green, supra*, 27 Cal.3d at p. 34.)

In the instant case the judge explicitly told the jury that "There is no testimony about whether the bottle cap was warm or cold...." If that admonition was inadequate, appellant should have requested an additional explanation or admonition. Since both court and counsel told the jury that statements by counsel are not evidence and the judge also told the jury there was no evidence on the point, we conclude that any harm could have been, and was, cured by these admonitions.

Accordingly, we hold the error[2] was waived by a failure to pursue the matter in the trial court, and if not it was clearly nonprejudicial. It is not reasonably probable that appellant would have received a more favorable result if the prosecution had not made the statement at issue.[3] (See *People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913].)

### FAILURE TO PRESERVE
### FINGERPRINT EVIDENCE

■ Appellant contends the items seized should have been suppressed because the police failed to preserve possible fingerprints. When the items of contraband were seized there was no effort to preserve possible fingerprints. The testimony was uncontradicted that it was possible though highly unlikely that fingerprints could have been lifted from the items seized.

---

[2]While we have considerable doubt as to the precise meaning of *People* v. *Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396] (disapproving *People* v. *Rhinehart* (1973) 9 Cal.3d 139, 154 [107 Cal.Rptr. 34, 507 P.2d 642]), we assume for purposes of this opinion that the prosecutor's statement was indeed misconduct under *Bolton*.

[3]Dicta in *People* v. *Bolton, supra*, 23 Cal.3d 208, suggests that in some instances a harmless beyond a reasonable doubt standard may be appropriate in reviewing prosecutorial misconduct. (*Id.*, at p. 214, fn. 4.) Whatever merit that suggestion may have, in the instant case such a standard is clearly not called for. The statement herein does not resemble "testimony" in any way.

*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], and the cases following it, related to the destruction of evidence which was in the possession of the prosecution. Thus, in *Hitch* a test ampoule from a breathalyzer was destroyed, and in the more recent case of *People* v. *Nation* (1980) 26 Cal.3d 169 [161 Cal.Rptr. 299, 604 P.2d 1051] a semen sample was inadvertently destroyed. In the instant case there is no way of knowing whether there were in fact fingerprints on the relevant items of evidence, and thus there is no factual support for the preliminary finding required by *Hitch* that evidence was in fact destroyed. Thus, *Hitch* cannot apply.

We have found no case and none has been cited which extends the prosecution's duty to affirmatively exert effort to discover potential evidence in the nature of fingerprints for the purpose of preserving such evidence for the defense. The consequence of such a rule would be to require the courts to examine the investigation made by the prosecution in each case to determine if the prosecutor properly conducted the investigation for the benefit of the defense. In practically every sex case the prosecutor would have to try and obtain and then preserve a semen sample. In every drunk driving case the prosecutor would have to conduct at least one of the several tests. In practically all cases where identification is an issue the prosecutor would have to attempt to obtain fingerprints. We think it would be ludicrous to cast upon the prosecution the burden of preserving what may only be termed "potential" evidence, and we reject appellant's position that we should extend *Hitch* to cover this type of situation.

### REFUSAL TO RELIEVE APPELLANT'S COUNSEL

■ Appellant urges that the trial court wrongfully refused to permit a substitution of counsel, for which a reversal is required. We disagree.

In this regard the following pertinent exchange occurred: "THE COURT: Mr. Maese, you wish to relieve Mr. Fielder from representing you?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you wish to represent yourself?

"THE DEFENDANT: No, I wish, I want the court to appoint me a new lawyer or give me time to obtain my own.

"THE COURT: What specifically has Mr. Fielder done wrong in your opinion?

"THE DEFENDANT: He has misled me and I feel that he has lied to me.

"THE COURT: How has he misled you?

"THE DEFENDANT: How?

"THE COURT: Yes.

"THE DEFENDANT: By, in one way talking me into a, into pleading guilty to being under the influence and as far as my witnesses, he hasn't brought the witnesses that I really wanted.

"THE COURT: What witnesses did you ask for?

"THE DEFENDANT: One was my mom.

"THE COURT: And what could she testify to?

"MR. FIELDER: Your Honor, may I counsel him before he goes into that?

"THE COURT: Well, the Supreme Court tells me I have to make an absolute record in this regard and make a ruling as to whether or not what he says is, whether or not his point is well taken.

"MR. FIELDER: I want to make sure that he understands once he starts going into that there may be a problem with the court then being able to ask me for what in effect would be work product of my investigations which the district attorney is going to hear if I have to divulge it to the court.

"THE COURT: Well, that is true. Is there a reason, Mr. Maese, that you didn't make this request of me earlier until the last day of the trial?

"THE DEFENDANT: I didn't want to, well, I didn't—I just didn't think that it was going to come out this way.

"THE COURT: Well, Mr. Maese, you will recall that I asked you on the record about this plea of guilty to this being under the influence and you indicated that you did it freely and voluntarily and all the rest of that; do you recall that?

"THE DEFENDANT: Yes, I recall that.

"THE COURT: Okay.

"MR. FELICE: If the court wishes, I will absent myself from the courtroom.

"THE COURT: It is not necessary in my opinion. The defendant has not verbalized well founded grounds to relieve Mr. Fielder.

"Secondly, it comes on the last day of the trial just before arguments are to commence. It is untimely.

"Thirdly, it would unduly delay these proceedings and we already have a jury and we are about ready to go to the jury. I think all of those factors considered, the court would have to deny the motion, and I think I have covered all of those grounds in this case, in the cases that the Supreme Court has ruled on.

"Okay. Do you want to get the jury. Are you satisfied with that, Mr. Fielder? Of course you can't speak, but I mean to the court's ruling as to your competence.

"MR. FIELDER: Well, he has indicated to me since we came out from chambers, he enumerated his grounds a little better than he has here. I think he somewhat has a difficult time explaining in words to the court what his objection is. I do want to make sure that as far as his grounds, the court is aware.

"THE COURT: I am aware of them.

"THE DEFENDANT: Could I have some time to talk to my—

"THE COURT: The motion is denied, Mr. Maese. This is unduly delaying these proceedings. The court has a right to control its own courtroom. Get the jury and the alternate."

In *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] our Supreme Court held that a defendant must be permitted to state the reasons why he believes a court-appointed counsel should be discharged. (*People* v. *Lewis* (1978) 20 Cal.3d 496, 497 [143 Cal.Rptr. 138, 573 P.2d 40].) The *Marsden* court recognized that a defendant does not have a right to more than one court-appointed attorney and that substitution is not required "'...except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused....'" (*People* v. *Marsden, supra,* 2 Cal.3d at p. 123.)

In the instant case there are three reasons why appellant's contention should be rejected. First, the motion was made just hours before the cause was submitted to the jury after a five-day jury trial. Second, the record does not indicate appellant's trial counsel was inadequate. Third, the record shows the court permitted appellant to state his reasons why he was dissatisfied with his court-appointed counsel.

Regarding the timeliness of the motion, we have found no case where a motion to relieve counsel was made so late. While if the motion had been well founded a mistrial could have been granted, appellant did not ask for a mistrial. He only wanted new counsel appointed. Without a *strong* showing of incompetent counsel, a motion this late in the trial would be "'"a disruption of the orderly processes of justice unreasonable under the circumstances....'"'" (See *People* v. *Carr* (1972) 8 Cal.3d 287, 299 [104 Cal.Rptr. 705, 502 P.2d 513]; *People* v. *Morgan* (1980) 101 Cal.App.3d 523 [161 Cal.Rptr. 664].)

As to the second reason, it is noted no argument has been made on appeal that appellant's trial counsel was incompetent. Ineffective assistance of counsel is the underlying plank which supports the *Marsden* rule. (*People* v. *Marsden, supra,* 2 Cal.3d at p. 123.) It can be inferred the motion had little substance if incompetence of counsel (see *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859]) is not raised on appeal.

As to the third reason, the record indicates the court did permit appellant to state his reasons for substitution of counsel. The court listened to them before denying the motion. When asked why he was dissatisfied, appellant said he was (1) misled and therefore pled guilty to the charge of being under the influence, and (2) wanted other witnesses, specifically his mother, called to testify.

The court denied the motion after reminding appellant he had "freely and voluntarily" entered the plea. Appellant's reason for not objecting earlier was "I just didn't think that it was going to come out this way."

■,■ It is settled that whether or not to call witnesses is ordinarily a matter of trial tactics within the attorney's control. (*People* v. *Lindsey* (1978) 84 Cal.App.3d 851, 859 [149 Cal.Rptr. 47]; *People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008].) Here it is clear appellant's mother could have given no relevant testimony except as a "character" witness. Alibi could not have been a defense. It is quite probable that counsel chose not to call appellant's mother because the testimony would open the door to rebuttal evidence on appellant's character. With appellant's record that might have been devastating. For that reason *People* v. *Munoz* (1974) 41 Cal.App.3d 62, 66 [115 Cal.Rptr. 726], is inapplicable.

At the conclusion of the discussion in chambers, appellant's attorney told the court that appellant had told him his grounds in a little clearer language. The attorney did not say appellant had *additional* grounds he wished to explain. The court said it was aware of the grounds and denied the motion. There was no abuse of discretion. (*People* v. *Marsden, supra*, 2 Cal.3d at p. 123.)

## RIGHT OF "ALLOCUTION"

■ Appellant argues that the denial of his right to allocution was reversible error. The record reflects that he was never asked if he "ha[d] any legal cause to show why judgment should not be pronounced against him." (See Pen. Code, § 1200.)

There was no prejudicial error. "The so-called 'allocution' required by section 1200, however, is a formal inquiry to be addressed in terms of the statute [citation] and, because it is a formality only [citation], it need not include the details for which defendant argues here. The trial court did not literally deliver an 'allocution' when it pronounced judgment, but such omission is not fatal where, as is clearly the case here, the defendant is present and represented by counsel and no prejudice appears." (*People* v. *Chew* (1971) 16 Cal.App.3d 254, 258 [94 Cal. Rptr. 83]; *People* v. *Thomas* (1955) 45 Cal.2d 433, 438 [290 P.2d 491].)

IMPROPER SENTENCE TO UPPER TERM

Appellant argues the criteria for imposing an aggravated sentence set forth in the California Rules of Court, rule 421, are invalid because they are too vague and uncertain. This argument has been fully answered adverse to appellant's position in *People* v. *Thomas* (1979) 87 Cal.App.3d 1014, 1022-1024 [151 Cal.Rptr. 483]. We agree with that decision.

Appellant also argues that the court impermissibly sentenced him to the upper term because the court relied upon improper criteria, to wit, his decision to plead not guilty and the fact that appellant was allegedly a chronic liar. These contentions are meritless. The court expressly stated it was not considering appellant's withdrawal from the plea bargain in imposing the aggravated term. The judge did ask counsel "if chronic lying is grounds for aggravation." He was informed it was not in the rules. The court then enumerated three grounds for aggravation, and lying was not one of them.[4]

■ Next appellant asserts that the aggravation of the sentence was not justified by the facts. This assertion has no merit. The quantity of heroin in the prophylactic (13.676 grams) is almost one-half ounce. In Penal Code section 1203.07 the Legislature has decreed that possession for sale of one-half ounce or more absolutely bars probation. Almost that quantity was present here, in a simple possession case, and the judge could reasonably consider that amount to be large. (See Cal. Rules of Court, rule 421(a)(11).)

The probation report indicates appellant has "progressed" from convictions for drunkenness to petty theft to narcotic offenses. (See rule 421(b)(2).) Appellant's prior performance on probation was poor. (See rule 421(b)(4), (b)(5).)

Appellant's argument on appeal that his performance on probation was not unsatisfactory because his failure to appear for a jail commitment was due to being hospitalized may not be raised for the first time on appeal. (*People* v. *Medina* (1978) 78 Cal.App.3d 1000, 1007 [144 Cal.Rptr. 581].) In any event his performance on probation was not satisfactory even if the failure to appear was justified. For example, these

---

[4]We need not decide if "chronic lying" is an improper factor to consider in passing sentence. We do note, however, that one court has intimated it is not in some circumstances. (*In re Perez* (1978) 84 Cal.App.3d 168, 171-173 [148 Cal.Rptr. 302].)

offenses were committed while appellant was on probation. However, even without this factor the aggravation was proper because the other grounds are well founded and this third ground is not an *improper* basis. (See *People v. Bolton, supra*, 23 Cal.3d at pp. 217-218.)

## MULTIPLE PUNISHMENT

██ Lastly, appellant argues he received multiple punishment by virtue of the concurrent sentences imposed. Appellant was sentenced to three years in state prison on the possession of heroin charge and to one year for being under the influence of heroin, with the sentences to be served concurrently. The court stayed imposition of sentence on the possession of paraphernalia charge, with the stay to become permanent upon the completion of the sentence for count one, possession of heroin.

We need not pass upon the interesting issue of whether the imposition of concurrent sentences under the Determinate Sentencing Act violates the double punishment provision of Penal Code section 654 since we have concluded that in any event there was no double punishment in this case.

We begin our examination of this contention with what we consider a truism: Penal Code section 654 is an analytical nightmare. (See *In re Adams* (1975) 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473].)

Recently in *People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal. Rptr. 40, 591 P.2d 63], our Supreme Court explained: "The general principles on the applicability of section 654 have been thoroughly reviewed in a number of decisions. [Citations.] For our purposes, it is sufficient to observe that it is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.] For example, [a] defendant...who attempted to murder a husband and wife by throwing gasoline into their bedroom and igniting it, could not be punished for both arson and attempted murder because his primary objective was to kill, and the arson was the means of accomplishing that objective and thus merely incidental to it.

"On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct. [Citations.]" (Fn. omitted.)

In *People* v. *Holly* (1976) 62 Cal.App.3d 797 [133 Cal.Rptr. 331] the trial court found that the defendant possessed 2.12 grams of heroin and that he was under the influence of heroin. The trial court held section 654 applied, and the Court of Appeal, in a two-to-one decision, affirmed. Appellant relies upon this decision.

Unlike the trial court in *Holly*, the trial court in the instant case did not make a factual determination that the facts and circumstances revealed a single intent and objective within the meaning of section 654. Assuming, however, that the trial court had so found, "...the dimension and meaning of section 654 is a legal question....We are concerned here with a question of law, not fact, in determining whether section 654 was properly applied in this case." (*People* v. *Perez, supra,* 23 Cal.3d at p. 552, fn. 5.) As *Perez* explains, application of Penal Code section 654 involves more than an application of the substantial evidence rule.

In the cause before us it appears there were independent criminal objectives, divisible from one another. Unlike *Holly*, a substantial amount of heroin was in appellant's possession. There is no way that the total quantity could be used by appellant in a "relatively short time." (*People* v. *Holly, supra,* 62 Cal.App.3d at pp. 805-806.) In *People* v. *Holly* the defendant had 16 balloons of heroin with a total weight of 2.12 grams. Police officers in that case testified that a normal balloon of heroin contained one-half gram and a "fix" could vary from one-half to a full balloon. The balloons in *Holly* would have contained an average of .13 grams of heroin. Therefore, all sixteen balloons could have been used in as short a time as four days if one-half gram were used each day.

Assuming appellant could use a full gram of heroin each day, it would still take at least 13 days to use the quantity he possessed. In other words, unless appellant used what would have to be lethal doses four days in succession the amount he possessed could not be used in as short a time period as was possible in *Holly*. We therefore conclude

that appellant was not possessing the heroin for use within a "relatively short time." Because the objectives are legally as well as factually divisible, appellant may be punished for both possession of heroin and being under the influence of heroin. While in this case we need not draw the line of how much heroin may be possessed for the purpose of being under the influence, so as to prohibit simultaneous punishment for being under the influence, 13.676 grams is too much.

The judgment is affirmed.

Hanson (P. D.), J. , and Condley, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 23, 1980.

*Assigned by the Chairperson of the Judicial Council.