122 Cal.Rptr.2d 872 (2002)
100 Cal.App.4th 1224
In re EDDIE M., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Eddie M., Defendant and Appellant.
No. B151521.
Court of Appeal, Second District, Division Seven.
August 6, 2002.
Review Granted October 23, 2002.
*873 Allen G. Weinberg, Santa Monica, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Carl N. Henry, Juliet H. Swoboda and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.
PERLUSS, J.

INTRODUCTION
Proposition 21 (the Gang Violence and Juvenile Crime Prevention Act of 1998), approved by the voters at the March 7, 2000 primary election, effected a number of significant changes to juvenile court law, including amendments to Welfare and Institutions Code section 777,[1] which governs modification of the placement of a ward of the court based upon subsequent acts of misconduct. Prior to amendment by Proposition 21, section 777 provided for the filing of a supplemental petition requesting the modification of a previous disposition order by reason of additional misconduct that either constituted a crime or violated a condition of probation that did not amount to a crime. The alleged misconduct *874 had to be proved beyond a reasonable doubt. (In re Arthur N. (1976) 16 Cal.3d 226, 235-241, 127 Cal.Rptr. 641, 545 P.2d 1345 (Arthur N.); In re Marcus A. (2001) 91 Cal.App.4th 423, 427, 109 Cal.Rptr.2d 919; In re Melvin J. (2000) 81 Cal.App.4th 742, 744, 758-759, 96 Cal.Rptr.2d 917.)
Amended section 777 now provides, "The facts alleged in the notice shall be established by a preponderance of the evidence at a hearing to change, modify, or set aside a previous order. The court may admit and consider reliable hearsay evidence at the hearing to the same extent that such evidence would be admissible in an adult probation revocation hearing ...." (§ 777, subd. (c).) The amended statute also eliminates the requirement that the juvenile court find the past placement has been ineffective in rehabilitating the minor before ordering a new, more restrictive placement. However, "if the minor is a court ward or probationer under Section 602 in the original matter," the modified section 777 procedures may be used only if "the notice alleges a violation of a condition of probation not amounting to a crime." (§ 777, subd. (a)(2), italics added.)
This appeal requires us to decide whether Proposition 21's relaxation of the standard of proof pursuant to section 777 in proceedings "alleg[ing] a violation of a condition of probation not amounting to a crime" applies only to requests for more restrictive placement based on subsequent conduct that could not be charged as a crime or whether those procedures may properly be used in any proceeding in which the minor is alleged only to have violated conditions of probation not amounting to a crime, even if the misconduct itself may also constitute a crime. We conclude that amended section 777 may be used to initiate proceedings to impose a more restrictive placement based on any violation of a condition of probation, including one that involves arguably criminal conduct, provided no new criminal offense is alleged. We also hold that section 777's reduced burden of proof for noncriminal probation violations is constitutional.

FACTUAL AND PROCEDURAL BACKGROUND

The Section 602 Adjudication and Commitment to Camp-Community Supervision
In October 2000 Eddie M., age 17, was a ward of the juvenile court under an order of camp-community supervision. On October 18, 2000 a Los Angeles County deputy sheriff contacted Eddie M. on the street and observed that he exhibited signs of the use of a controlled substance. Eddie M. told the deputy he had used methamphetamine that morning. A small quantity of methamphetamine was later discovered in Eddie M.'s wallet.

Subsequent Juvenile Wardship
A new petition was filed pursuant to section 602, and on November 14, 2000 Eddie M. admitted he had possessed methamphetamine and was under the influence of a controlled substance. (Health & Saf. Code, §§ 11377, subd. (a), 11550, subd. (a).) At disposition the juvenile court read and considered a social study indicating Eddie M. had a history of contacts with law enforcement and two prior camp-community commitments. He was a gang member and the father of two children. After considering the social study and counsels' comments, the court rejected a commitment to the California Youth Authority (CYA) and instead committed Eddie M. to the long-term, one-year camp-community supervision program.

*875 The Section 777 Proceedings To Modify Placement

On May 3, 2001 Eddie M.'s probation officer filed a "Petition and Probation Officer's Report,"[2] identifying six incidents of misconduct by Eddie M. at his camp placement. Each incident allegedly violated both condition number one of Eddie M.'s probation, that he obey all laws, and condition number two, that he follow all instructions of probation staff. Several incidents also allegedly violated additional probation conditions that required Eddie M. to maintain good grades and citizenship in school and not leave camp without permission. The probation officer recommended that Eddie M. be committed to the CYA.
At the hearing on the request to modify placement, the People introduced evidence only as to four of the six incidents.

Incident No. 2
Los Angeles County Probation Officer Darren Deckard testified that in the early evening of December 23, 2000 the wards were showering and Deckard was conducting a clothing exchange. Eddie M. refused to turn in his sweatshirt to obtain a clean one. Eddie M. said he had purchased the sweatshirt in juvenile hall and the dirty sweatshirt was "his." Deckard testified that all sweatshirts worn while in confinement in camp or juvenile hall are county-owned. Deckard testified Eddie M.'s attitude was "defiant." Deckard had to go into Eddie M.'s locker personally and put the dirty sweatshirt into the laundry. Deckard explained that the other 55 wards heard his exchange with Eddie M. and stopped what they were doing to see what would happen. Another probation officer then took Eddie M. to the Security Housing Unit (SHU) to discipline him. Deckard opined that incidents like this have the potential for creating an unsafe situation for the staff and other minors confined in camp.

Incident No. 3
Probation Officer Cesar Arroyo testified that, at about 9:30 p.m. on March 23, 2001, one hour after the usual 8:30 p.m. bedtime, Eddie M. was reading a book. Arroyo asked Eddie M. several times to put the book away. The other 55 minors in the dormitory were sleeping, but woke up during the disturbance. Eddie M. was transferred to the SHU because he failed to follow camp rules and staff instructions.

Incident No. 5
Arroyo testified that on April 21, 2001 the camp had a special "L.A. Dads" program for the fathers of children. Eddie M., along with the other participating minors, was instructed to remain seated at the end of the program. Despite the instruction, Eddie M. walked out of the gym with his girlfriend and his two children and headed toward the camp security gate. At this point, he was "out of supervision." Arroyo radioed a supervisor who stopped Eddie M. before he reached the security gate. The supervisor told Eddie M. he would be getting a Notice of Substantial Penalty. That upset Eddie M, who defiantly replied to the supervisor, "Go ahead, take me to the SHU."

Incident No. 6
Probation Officer Salvador Nunez testified that, at about 10:00 p.m. on April 26, 2000, Eddie M. refused to shave as required *876 by camp rules. The camp supervisors counseled Eddie M. about the rule violation. Back in the dormitory, Nunez encouraged Eddie M. to shave and comply with the rules. Eddie M. partially complied, then asked Nunez for some personal photographs of his family kept in the staffs control area. Nunez told Eddie M. to shave first and then Eddie M. could have the photographs. Eddie M. told Nunez, "No I want to see them now." Nunez directed him, "Look, just finish shaving and I'll let you see your pictures." Supervisors again counseled Eddie M. about failing to shave. When Eddie M. refused to finish shaving, he was asked to go to the SHU. On his way to the exit, Eddie M. dove into the staff control center and tried to grab his photographs. Probation Officer Glover stopped Eddie M., who then became argumentative and refused to follow Glover's instructions to step out of the control center. Glover handcuffed Eddie M. Eddie M. refused to move. Eventually it took five probation officers to wrestle Eddie M. to the ground and carry him to the SHU.

Testimony In Defense
Eddie M. testified in his own defense and claimed he was "running a very good program." He admitted he read the book in defiance of staff instructions, refused to shave and entered the control center without permission. He explained that, to avoid serious confrontations with the staff, he would just tell the staff to take him to the SHU. With respect to each of the four incidents as to which evidence had been presented, Eddie M. denied wrongdoing except to the limited extent just described. He claimed he was neither defiant nor confrontational.

The Court Sustained the "Supplemental Petition"
The People argued that each incident of misconduct had been proved "by a preponderance of the evidence" and that the evidence demonstrated Eddie M. has a problem with authority and resists and defies staff. The court found Eddie M. committed incident Nos. 2, 3, 5 and 6.

Disposition Hearing
Following its decision sustaining the allegations of misconduct, the court spoke at length with Nunez, who was Eddie M.'s counselor, regarding disposition. Nunez opined that Eddie M. did not have sufficient discipline to get along as an adult and CYA had better counseling facilities than were available in camp. CYA also had better facilities for maintaining discipline for an unruly and older ward. Local resources were exhausted.
Counsel for Eddie M. argued that the disciplinary incidents in camp were themselves "insignificant," and the nature of the underlying methamphetamine violations and Eddie M's insignificant history of law enforcement contacts did not warrant a CYA commitment. According to defense counsel, Eddie M., who would soon be 19, was simply too old to benefit from camp. Counsel urged an order of home on probation and, if any further confinement was required, that Eddie M. be confined in jail for a short period of time.
The court indicated it was having some difficulty reaching a decision as to disposition. However, after listening to argument of counsel, the court expressly found a probable benefit from a CYA commitment and held that Eddie M. was "in violation of the conditions of probation." The court ordered a CYA commitment.
The court then calculated the maximum theoretical period of confinement as three years four months: a "base term" of three years for felony possession of methamphetamine and a consecutive term of four *877 months (one-third the one-year maximum) for the misdemeanor offense of being under the influence of a controlled substance.

CONTENTIONS
Eddie M. asserts that three of the four probation violations for which he was tried by the juvenile court involved misconduct amounting to a crime: count 2, theft of a sweatshirt (Pen.Code, § 484); count 5, attempted escape (Welf & Inst. Code, § 871, subd. (a)); and count 6, resisting a peace officer (Pen.Code, § 148, subd. (a)) or executive officer (Pen.Code, § 69). Relying on In re Marcus A., supra, 91 Cal.App.4th at page 427, 109 Cal.Rptr.2d 919 (alleged probation violation that "amounted to a criminal offense ... should not have been pursued in proceedings initiated under the amended version of ... section 777"), Eddie M. contends the juvenile court violated section 777 and deprived him of due process by ordering a more restrictive placement after finding he had violated probation in each of those incidents utilizing a preponderance of the evidence standard of proof.
Eddie M. also contends the juvenile court improperly calculated the maximum theoretical length of his confinement by including consecutive terms for possession of methamphetamine and for the misdemeanor offense of being under the influence of a controlled substance, rather than staying the latter term pursuant to Penal Code section 654.
The Attorney General has essentially conceded the juvenile court committed error in proceeding pursuant to section 777 with respect to incidents No. 2, 5 and 6, but argues that any error is harmless. Nonetheless, we directed the parties to submit supplemental letter briefs answering the following questions: "1. Did Eddie M. waive his claim that proceedings were improperly brought under ... section 777 by failing to raise the issue in the juvenile court? [¶] 2. Can the People elect to proceed under section 777 by alleging that conduct constitutes only a violation of a condition of probation (other than the `obey all laws' condition) even if such conduct would also constitute a crime? (Should this court follow In re Marcus A. [, supra,] 91 Cal.App.4th 423 [109 Cal. Rptr.2d 919]?) [¶] 3. Even if the People could elect to proceed under ... section 777 as described in Question No. 2, does the formal allegation in a section 777 notice that the conduct at issue violated the `obey all laws' condition of supervision preclude a section 777 proceeding?"[3]

DISCUSSION

1. Eddie M. Has Not Waived His Claim that Proceedings Were Improperly Brought under Section 777.
Eddie M.'s trial counsel failed to argue in the juvenile court that it was error to proceed under section 777 with respect to allegations that Eddie M. had violated conditions of his probation that amounted to a crime. If Eddie M.'s complaint were simply directed to a pleading defect, we might well conclude the issue had been waived. (See, e.g., People v. Price (1991) 1 Cal.4th 324, 398, 3 Cal. Rptr.2d 106, 821 P.2d 610 [by not demurring *878 to charge of conspiracy in information, defense waived claim that charge was ambiguous or uncertain].) The error asserted, however, is that adjudication in the juvenile court proceeded with a standard of proof lower than that mandated by the constitutiona "`structural defect[ ] in the constitution of the trial mechanism ... affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' [Citation.]" (People v. Flood (1998) 18 Cal.4th 470, 493, 76 Cal.Rptr.2d 180, 957 P.2d 869.) Constitutional issues affecting the substantial rights of a defendant may be reviewed on appeal despite the failure to raise the issue in the trial court. (See People v. Allen (1974) 41 Cal.App.3d 196, 201, fn. 1, 115 Cal.Rptr. 839; People v. Norwood (1972) 26 Cal.App.3d 148, 153,103 Cal.Rptr. 7 ["A matter normally not reviewable upon direct appeal, but which is shown by the appeal record to be vulnerable to habeas corpus proceedings based upon constitutional grounds may be considered upon direct appeal. [Citations.]"].) We therefore address Eddie M.'s constitutionally based challenge to the propriety of the section 777 hearing at which his probation was revoked.

2. Section 777 May Be Used To Adjudicate Alleged Violations of Probation Conditions If the Notice Does Not Allege Commission of a New Crime.

a. Historical Overview of Section 777 and Implementing Rules of Court.
Former section 777 governed the modification of disposition orders in delinquency cases when the previous orders had proved ineffective and the recommendation was to impose a more restrictive placement, including commitment to the CYA. "Supplemental petitions are authorized in juvenile proceedings by section 777, which provides in part that `an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after noticed hearing upon a supplemental petition.' The supplemental petition procedure is designed for situations where it is necessary to substitute a more restrictive placement because the original disposition by the juvenile court `has not been effective in the rehabilitation or protection of the minor.' [Citation.] Typically, a section 777 supplemental petition will be required to move a minor from a foster home or juvenile hall to the custody of the Youth Authority. [Citations.] Since this modification results in a greater intrusion on the minor's liberty, a section 777 petition must contain a statement of the facts which it is alleged demonstrate a need for Youth Authority placement [citation] and can only be sustained after notice and hearing." (In re Ronald E. (1977) 19 Cal.3d 315, 326, 137 Cal.Rptr. 781, 562 P.2d 684.)
When the child's wardship was the result of a sustained petition under section 602, the supplemental petition filed under former section 777 had to allege either a new criminal offense or a violation of a condition of probation not amounting to a crime. (Former § 777, subd. (a)(2), as amended by Stats.1986, ch. 757, § 5, p. 2478.) If the juvenile court upheld the supplemental petition, including a finding that the previous disposition had been ineffective in the rehabilitation or protection of the child, it could commit the child to the CYA and set a maximum theoretical time of confinement, which could include aggregation of the maximum confinement periods for all previously sustained section 602 petitions. (§ 726; In re Ernest R. (1998) 65 Cal.App.4th 443, 448-449, 76 Cal.Rptr.2d 453.)
The California Supreme Court considered the burden of proof necessary to sustain *879 a supplemental petition filed pursuant to former section 777 in Arthur N., supra, 16 Cal.3d 226, 127 Cal.Rptr. 641, 545 P.2d 1345. Significantly, at that time former section 777 required only that the supplemental petition allege "facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor" (stats.1971, ch. 641, § 6, p. 1263[4]; see Arthur N., at p. 235, fn. 9, 127 Cal.Rptr. 641, 545 P.2d 1345), although "[o]ften, as in the instant case, such a supplemental petition alleges that the ward has disobeyed an order of the juvenile court by his commission of a criminal offense." (Arthur N., at p. 235, 127 Cal.Rptr. 641, 545 P.2d 1345.) Relying on principles enunciated by the United States Supreme Court in In re Gault (1967) 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527], and In re Winship (1970) 397 U.S. 358 [90 S.Ct. 1068, 25 L.Ed.2d 368], the Supreme Court held that due process requires proof beyond a reasonable doubt to establish acts of misconduct or crimes charged in a supplemental petition pursuant to section 777: "[W]hen a supplemental petition charges acts of misconduct or crimes which may lead to substantially more restrictive punishment or custody the bifurcated hearing procedure established for original proceedings by sections 701 and 702 should be utilized and the juvenile accorded the same constitutional and statutory rights that he has on an original petition." (Arthur N., at p. 240, 127 Cal.Rptr. 641, 545 P.2d 1345.)
In reaching this result, the Arthur N. Court rejected as "superficial" the asserted similarity between proceedings under former section 777 and adult probation violation hearings. (Arthur N., supra, 16 Cal.3d at p. 236, 127 Cal.Rptr. 641, 545 P.2d 1345.) "Unlike adult criminal proceedings in which probation may be granted as an act of leniency in appropriate cases, but where denial or probation and imposition of sentence to a term of imprisonment is ordinarily not an abuse of discretion, the Juvenile Court Law `"contemplates a progressively restrictive and punitive series of disposition orders in cases such as that now before usnamely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement.'" [Citation.] Thus, while the adult whose probation is revoked may not be subjected to any greater punishment than that provided for the original offense, a juvenile adjudged a 601 ward as the result of noncriminal conduct, and a 602 ward adjudged so on the basis of a minor offense, may be removed from the parents' home and subjected to increasingly severe and restrictive custody which exceeds that which would have been permissible initially, if he is later found on a supplemental petition to have committed additional acts of misconduct. For this reason, respondent's suggestion that a hearing on a supplemental petition is a hearing on `disposition,' not subject to the reasonable doubt standard, rather than an `adjudicatory hearing' cannot withstand scrutiny." (Id. at p. 237, 127 Cal.Rptr. 641, 545 P.2d 1345.)[5]
*880 The year following the Arthur N. decision the Judicial Council adopted comprehensive Juvenile Court Rules, effective July 1, 1977, governing the procedures in dependency and delinquency cases. Former California Rules of Court, rule 1392(d),[6] as initially approved in 1977, required use of the reasonable doubt standard of proof in the determination of all supplemental petitions, not simply those that alleged commission of a new crime: "(d) [Requirement for bifurcated hearing] The hearing on a supplemental petition shall be conducted as follows: [¶] (1) The procedures relating to jurisdiction hearings prescribed in Chapter 7 (commencing with rule 1351) [which include in rule 1355(b) the requirement of proof beyond a reasonable doubt supported by evidence legally admissible in the trial of criminal cases to sustain as true allegations in a petition under section 602] shall apply to the determination of the allegations of the supplemental petition...."
The Advisory Committee Comment expressly addressed the expansion of the reasonable doubt requirement to include situations in which the more restrictive placement was sought based on misconduct not charged as a new criminal offense: "The statutory law is silent on the nature of the hearing on a supplemental petition. [Citations.] In accord with the practice in most counties [citation], and as now required in certain instances by case law (see In re Arthur N., [supra, 16 Cal.3d 226, 127 Cal.Rptr. 641, 545 P.2d 1345]), subdivision (d) prescribes that a two-part hearing be held on the supplemental petition, analogous to the jurisdiction and disposition hearings held on the original petition. This is required by judicial decisions in those cases where the supplemental petition charges new and different criminal acts not included in the original petition (In re Arthur N., [citation]). This rule would extend `the same panoply of ... protections' to all hearings on supplemental petitions." (Advisory Com. com. 23 Pt. 2 West's Ann Codes, Rules (1981 ed.) foll. former rule 1392, pp. 338-339, italics added.)
The use of the phrase "violation of a condition of probation not amounting to a crime" first appeared in former section 777 in amendments adopted in 1986. Prior to 1986, supplemental petitions seeking to impose a more restrictive placement for a child under the jurisdiction of the juvenile court were to be filed by a probation officer if the child was a ward of the court under section 601[7] and by the prosecuting attorney at the request of the probation officer if the child had been declared a ward of the court or probationer under section 602.[8] (See Stats.1981, ch. 1142, § 9, pp. 4536-4537.) As amended in 1986, former section 777 provided for the filing of a supplemental petition "[b]y the probation officer if the minor is a court ward or probationer under section 602 in the original matter and the supplemental petition alleges a violation of a condition of probation *881 not amounting to a crime. ... By the prosecuting attorney at the request of the probation officer if a minor has been declared a ward or probationer under Section 602 in the original matter and the petition alleges a violation of a condition of probation amounting to a crime...." (Stats.1986, ch. 757, § 5, p. 2478, italics added.)[9]
In contrast to the Supreme Court's dismissal of the analogy between supplemental petition proceedings and adult probation revocation proceedings as "superficial," the intent of the Legislature in enacting the 1986 amendments was "to enable probation officers supervising juvenile offenders to take advantage of expeditious procedures which are currently available to probation officers supervising adult offenders, and to provide for the development of consistent standards of accountability for wards of the juvenile court similar to those in existence for adult probationers." (Stats.1986, ch. 757, § 2, p. 2476.)
As amended effective January 1, 1987, former rule 1392(b) reflected the Legislature's decision to authorize probation officers to initiate a request to modify a prior placement order in all cases except where the supplemental petition alleged a new criminal offense. The amended rule provided that a supplemental petition under former section 777 "shall be filed by the prosecuting attorney at the request of the probation officer where the minor has been declared a ward or probationer under section 602 when the petition alleges commission of a crime and by the probation officer when the petition alleges violation of a condition of probation not amounting to a crime." (Italics added.)
Former rule 1392 was repealed and replaced by rule 1431, effective July 1, 1989. As initially adopted, former rule 1431(b) continued the distinction between supplemental petitions alleging "commission of a crime," which were to be filed only by the prosecuting attorney if the child has been declared a ward pursuant to section 602, and petitions alleging the 602 ward "has violated a condition of probation not amounting to a crime," which could be filed by the probation officer. That distinction continued in the subsequent iterations of rule 1431 until the Judicial Council amendments effective January 1, 2001 eliminated all reference to section 777 in rule 1431.[10]

b. Amendment of Section 777 by Proposition 21.
Proposition 21 amended section 777 in several significant respects, in addition to eliminating the supplemental petition itself *882 and permitting modification proceedings to be initiated simply by giving notice of the hearing to the child and other concerned individuals. (§ 777, subd. (a).)[11] First, the amendments eliminate the necessity for a finding by the juvenile court that the prior disposition had been ineffective in the rehabilitation of the child. (See In re Jorge Q. (1997) 54 Cal.App.4th 223, 231-232, 62 Cal.Rptr.2d 535.) Second, the burden of proof in a section 777 hearing has been lowered from proof beyond a reasonable doubt to a preponderance of the evidence. (§ 777, subd. (c).) Third, by direct reference to the analogous rule in adult probation revocation hearings, the juvenile court is now authorized to admit and consider reliable hearsay evidence in proceedings pursuant to section 777. (Ibid.)[12] Finally, imposition of a more restrictive placement through a proceeding under section 777 is now limited to proof of "a violation of a condition of probation not amounting to a crime." (§ 777, subd. (a)(2).)
Viewed collectively, Proposition 21's amendments to section 777 were plainly intended to conform the procedures applicable in juvenile probation revocation hearings to those in adult probation hearings, thereby completing the process begun by the Legislature in 1986 (see Stats. 1986, ch. 757, § 2, p. 2476 [intent of 1986 amendment to § 777 was "to enable probation officers supervising juvenile offenders to take advantage of expeditious procedures which are currently available to probation officers supervising adult offenders"].) In particular, by authorizing a modification of placement based on a violation of a court order, rather than a determination of the ineffectiveness of the placement in the rehabilitation of the child, Proposition 21like its unsuccessful legislative predecessors[13]expands the authority of the juvenile court to revoke probation while simultaneously reducing the procedural requirements for doing so.

c. Section 777 Permits Adjudication of Any Violation of a Condition of Probation Provided No New Criminal Offense Is Alleged.
In In re Marcus A., supra, 91 Cal. App.4th 423, 109 Cal.Rptr.2d 919, Division Two of the Court of Appeal, Fourth Appellate District, after observing that section 777 "was dramatically changed by the passage of Proposition 21" (id. at p. 427, 109 Cal.Rptr.2d 919), held that misconduct that might be charged as a new criminal offense could no longer be alleged as a violation of a condition of probation under section 777. (Ibid.) The juvenile court had sustained an allegation that Marcus A. violated a condition of his probation by possessing cigarettes in contravention of the rules of the juvenile facility in which he was placed. Based on this probation violation, the juvenile court ordered him committed *883 to the CYA.[14] The Court of Appeal reversed: "[S]ince he was under the age of 18, Marcus A.'s possession of cigarettes was a criminal offense. (Pen.Code, § 308, subd. (b).) Because this alleged probation violation occurred after the amended statute's effective date and amounted to a criminal offense, it should not have been pursued in proceedings initiated under the amended version of ... section 777." (Ibid.)
Although the Attorney General has accepted Marcus A.'s cramped construction of the scope of amended section 777,[15] we do not. From the historical development of section 777 and former rules 1392 and 1431 described above, it is plain that the Legislature and the Judicial Counciland ultimately the voters in adopting Proposition 21divided supplemental petitions into two categories:
(1) Petitions actually alleging commission of a new criminal offense, which could be filed only by the prosecuting attorney and which, at the election of the prosecutor, could be the subject of a new section 602 petition. (See, e.g., In re Michael B. (1980) 28 Cal.3d 548, 553, 169 Cal.Rptr. 723, 620 P.2d 173 ["A practice has developed, therefore, of filing new section 602 petitions, rather than section 777 supplemental petitions, to charge new offenses even when the minor is already a section 602 ward. [Citation.] This practice is not contrary to law."].)
(2) Petitions alleging a violation of a court ordered condition of probation, which could be filed by the child's probation officer. (See, e.g., In re Ernest R., supra, 65 Cal.App.4th at pp. 446-447, 76 Cal.Rptr.2d 453.)[16]
Nothing in the language of either the statute or rules or in the relevant case law supports the view that this second category did not include supplemental petitions alleging as a violation of a condition of probation specific misconduct (for example, fighting in violation of the rules of the placement facility) that might also constitute a new criminal offense (e.g., assault) but has not been alleged as such. (See, e.g., In re Tyrone O. (1989) 209 Cal.App.3d 145, 149, 257 Cal.Rptr. 134 [probation officer filed petition under former section 777 alleging juvenile "refused to submit to intake procedures and repeatedly threatened *884 to commit suicide or to run away if forced to stay"].)
In limiting the grounds for an order imposing a more restrictive placement, the Proposition 21 amendments simply removed from section 777 the first category of subsequent misconductthat is, allegations of the commission of a new crime by a section 602 ward. While previously a new criminal offense could result in an additional section 602 petition, a section 777 petition or a "unitary petition" containing the requisite allegations from both sections (In re Michael B., supra, 28 Cal.3d at pp. 553-554, 169 Cal.Rptr. 723, 620 P.2d 173), after Proposition 21 the district attorney can bring subsequent criminal conduct to the attention of the juvenile court only through a new 602 petition. Proposition 21, however, left undisturbed the second category of supplemental petitions (although eliminating the need for the petition itself): The probation officer or district attorney may still seek a more restrictive placement based on the violation of a condition of probation not alleged as a new crime. (See § 777, subd. (a)(2); rule 1433 ["(a) ... Notice of a hearing to be held under section 777 shall be prepared: [¶] ... [¶] (2) By the probation officer or the district attorney if the child is a ward or is on probation under section 602, and the alleged violation of probation is not a crime."].)
Thus, in the case at bar, Eddie M.'s probation officer initiated section 777 proceedings not by alleging that Eddie M. had committed theft, resisted a peace officer and attempted to escape from camp, but by properly alleging a series of incidents of misconduct that demonstrated "a complete lack of respect for authority, continual dorm disturbances, and the use of passive aggressive manipulation.... When confronted by officers minor was often argumentative and defiant." It would make little sense to construe section 777 as precluding Eddie M.'s probation officer from seeking a more restrictive placement in this case simply because elements of some actual crimes might be lurking within this pattern of defiant and disruptive behavior. (See Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1392, 241 Cal.Rptr. 67, 743 P.2d 1323 ["Statutes are to be given reasonable and commonsense interpretation consistent with the apparent legislative purpose and intent `and which, when applied, will result in wise policy rather than mischief or absurdity.' [Citation.]"].) Accordingly, we hold that amended section 777 may be used to initiate proceedings to impose a more restrictive placement based on any violation of a condition of probation, including one that involves arguably criminal conduct, provided no new criminal offense is alleged.[17]

d. Section 777's Reduced Burden of Proof for Noncriminal Probation Violations Is Constitutional.
Amended section 777 provides that "[t]he facts alleged in the notice [of a probation violation] shall be established by a preponderance of the evidence at a hearing to change, modify, or set aside a previous order." (§ 777, subd. (c).) Eddie M. *885 argues that permitting the juvenile court to proceed under a standard of proof less than reasonable doubt violates his right to due process. We disagree: Use of a reduced burden of proof to establish noncriminal probation violations in a juvenile proceeding does not violate the child's constitutional right to due process. (See People v. Rodriguez (1990) 51 Cal.3d 437, 441, 272 Cal.Rptr. 613, 795 P.2d 783 [preponderance of the evidence standard is constitutional in adult probation revocation proceedings].)
To be sure, in Arthur N., supra, 16 Cal.3d 226, 127 Cal.Rptr. 641, 545 P.2d 1345, a case involving a supplemental petition charging commission of a new crime (robbery) as the basis for committing the juvenile to the CYA, the Supreme Court held that due process requires proof beyond a reasonable doubt to establish the misconduct alleged in a section 777 supplemental petition. (Id. at p. 240, 127 Cal. Rptr. 641, 545 P.2d 1345.) As recognized by Division Four of our court in In re John G. (1977) 72 Cal.App.3d 242, 245-246, 139 Cal.Rptr. 849, and by the Advisory Committee that drafted former rule 1392, however, the holding of Arthur N. is limited to situations "where the supplementary petition charges new and different criminal acts not included in the original petition." (Advisory Com. com. 23 Pt. 2 West's Ann. Codes, Rules (1981 ed.) foll. former rule 1392, pp. 338-339 [adoption of rule 1392 will extend Arthur N.'s panoply of protections "to all hearings on supplemental petitions"].) Adoption of the requirement of proof beyond a reasonable doubt for all supplemental petition hearings was the result of a change in court rules, not constitutional decision. (In re Antonio A., supra, 225 Cal.App.3d 700, 704-706, 275 Cal. Rptr. 482 [Arthur N.'s holding "has now been adopted by rule to apply to all supplemental petitions"; the governing rule of court "applies the procedural safeguards attendant to jurisdictional hearings on original petitions to hearings on all supplemental petitions; there is no room for distinguishing or excluding petitions based on the case history, type of offending conduct, or recommended disposition."].)
Having been extended by rule of court beyond its constitutional bedrock, the requirement of proof beyond a reasonable doubt in juvenile probation violation proceedings can be restricted to proceedings involving allegations of additional criminal offenses (which now must be initiated by a new section 602 petition) without violating the juvenile's due process rights. (See Crawford v. Los Angeles Board of Education (1982) 458 U.S. 527, 535-536 [102 S.Ct. 3211, 73 L.Ed.2d 948] [no constitutional violation when state repeals remedial legislation that provided greater protection than constitutionally required].) Moreover, changes in juvenile law since the decision in Arthur N. have eliminated the primary ground upon which the Supreme Court rejected the analogy between a section 777 proceeding and adult probation revocation hearings at which use of the lower standard of proof had been upheld. These changes ensure that the juvenile's basic rights will not be jeopardized by utilization of the preponderance of the evidence standard adopted by the voters in Proposition 21.[18]
At the time of the Arthur N. decision, the juvenile court was not required when ordering a child committed to the CYA to specify a maximum period of confinement. As the Supreme Court observed, commitment to the CYA was "not limited to a *886 period that is proportionate to the original act or acts of misconduct or criminal behavior upon which jurisdiction over the minor was first asserted." (Arthur N., supra, 16 Cal.3d at pp. 238-239, 127 Cal. Rptr. 641, 545 P.2d 1345.) Accordingly, the Arthur N. Court was properly concerned that, "while the adult whose probation is revoked may not be subjected to any greater punishment than that provided for the original offense," a section 602 ward may be "subjected to increasingly severe and restrictive custody which exceeds that which would have been permissible initially, if he is later found on a supplemental petition to have committed additional acts of misconduct." (Id. at p. 237, 127 Cal.Rptr. 641, 545 P.2d 1345.)
Amendments to section 726 made in late 1976 after the Arthur N. decision and in 1977 (1976 Stats., ch. 1071, § 29, p. 4827; 1977 Stats., ch. 1238, § 1, p. 4158) now require the juvenile court, whenever it removes a child from the custody of his or her parent or guardian, to "specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726, 2d par.) Although revocation of probation may cause a change in placement imposing greater restrictions on the juvenile's liberty, he or she remains a ward of the court subject to the same maximum term of physical confinement, calculated based on the underlying offense that resulted in the sustained original section 602 petition (and any subsequent 602 petitions). (See In re Ernest R., supra, 65 Cal.App.4th at 446-50, 76 Cal.Rptr.2d 453.) Like revocation of an adult offender's probation, therefore, revocation of probation under section 777 "`deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [ ] restrictions.' [Citations.] Even though deprivation of this conditional liberty is `a serious deprivation requiring that the [probationer] be accorded due process,' [citation], `... revocation ... is not part of a criminal prosecution' [citation] and, `[accordingly, probation may be revoked despite the fact that the evidence of the probationer's guilt may be insufficient to convict him of the new offense.' [Citation.]" (People v. Rodriguez, supra, 51 Cal.3d at p. 442, 272 Cal.Rptr. 613, 795 P.2d 783.)
In sum, section 777's reduced burden of proof for any alleged violation of juvenile probation not charged as a new criminal offense is constitutional. If a new crime is alleged as the basis for ordering a more restrictive placement of a section 602 ward, a new section 602 petition must be filed. The juvenile will continue to have the benefit of the reasonable doubt standard of proof in contesting the truth of the allegations of the petition (rule 1488(e)), but will also be subject to an additional period of confinement if the new petition is sustained. (§ 726; In re Michael B., supra, 28 Cal.3d at p. 553, 169 Cal.Rptr. 723, 620 P.2d 173.) If only probation violations are alleged, even if the misconduct is also arguably criminal, use of section 777 and a preponderance of the evidence standard of proof is proper. At such a hearing, the juvenile confronts neither additional periods of confinement beyond those attributable to the criminal offenses on which his or her wardship is based nor the possible collateral consequences of a new 602 determination. (See, e.g., Pen.Code, § 667, subd. (d)(3) [defining certain section 602 wardship adjudications to be "strikes" within the meaning of the "Three Strikes" law].)

*887 3. The Juvenile Court Improperly Calculated the Theoretical Maximum Period of Confinement.

Section 726 provides that, if the minor is removed from the parent's physical custody based on an order of wardship, the minor "may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." Eddie M. contends the juvenile court improperly calculated his maximum theoretical period of confinement by including consecutive terms for the two drug offenses he committedpossession of a controlled substance and being under the influence of a controlled substancerather than staying the latter term pursuant to Penal Code section 654.[19] We agree.
Penal Code section 654's principles apply to juvenile wardship proceedings with respect to calculating the maximum theoretical term of confinement in cases involving consecutive sentencing. (In re Michael B., supra, 28 Cal.3d at p. 556, fn. 3, 169 Cal.Rptr. 723, 620 P.2d 173; see In re Robert W. (1991) 228 Cal.App.3d 32, 34, 279 Cal.Rptr. 625 [Pen.Code, § 654 has no application to determination of juvenile's theoretical maximum length of confinement if periods of confinement for multiple offenses are not aggregated].) In People v. Holly (1976) 62 Cal.App.3d 797, 133 Cal.Rptr. 331, Division One of this court held that Penal Code section 654 precludes sentencing for both possession of a small amount of heroin and the condition of being under the influence of heroin when the evidence supports the inference that the possession and use and being under the influence constitute an indivisible course of conduct. (Id. at pp. 805-806, 133 Cal.Rptr. 331.) As in Holly, Eddie M. was charged with being under the influence of methamphetamine at the time of his arrest. At the same time he was in possession of a small quantity of methamphetamine, apparently found in his wallet. The meager record before the juvenile court does not support an inference that the amount of methamphetamine found on Eddie M. "exceeded his need for personal use within a reasonable time." (Id. at p. 806, 133 Cal. Rptr. 331.)
Under these circumstances, including consecutive terms for both offenses in calculating the maximum theoretical term of confinement violated Penal Code section 654; the juvenile court was required to stay the misdemeanor term for being under the influence of a controlled substance. Accordingly, we modify the juvenile court's order to reduce the maximum theoretical period of confinement to a period of three years.

DISPOSITION
The order under review is modified by striking four months from the maximum theoretical period of confinement of three years four months as calculated by the juvenile court. In all other respects, the order under review is affirmed.
I concur: LILLIE, P.J.
JOHNSON, J, concurring.
I concur in the judgment but not the rationale of the majority opinion. In my *888 view, Proposition 21 has effectively precluded the use of amended section 777 of the Welfare and Institutions Code to initiate proceedings for the purpose of increasing a minor's confinement based on additional misconduct that is criminal in nature.[1] The prosecution erred by electing to initiate proceedings pursuant to section 777 of the Welfare and Institutions Code.[2]
In this particular case, however, the evidence the prosecution proffered easily met the elevated standard of beyond a reasonable doubt even though the trial court purported to apply a preponderance of the evidence standard. I conclude the court would have sustained the allegations of the supplemental petition had it applied the correct standard. Accordingly, I concur in the result if not the reasoning of the majority opinion.
In re Marcus A. held amended section 777 is only applicable to acts of misconduct not amounting to a crime.[3] In that case the court found the alleged probation violations were criminal in nature and had occurred after the effective passage of Proposition 21. Consequently, the prosecution was not permitted to initiate proceedings under section 777.[4] The People conceded they had committed an error by initiating proceedings under section 777.[5] Accordingly, it was necessary to prove the alleged violation beyond a reasonable doubt in order to satisfy due process.
The instant case is similar to In re Marcus A. All but one of the allegations of misconduct against appellant constituted a violation of the criminal law. Hence the prosecution should have been barred from initiating proceedings pursuant to amended section 777 in regard to those acts of misconduct. As in In re Marcus A., the prosecution here concedes it erred with respect to these allegations. But the prosecution contends this error is harmless because of count 3, the charge that did not amount to a violation of the law but was still considered a violation of probation. The fact a single count was filed correctly under the applicable statutory provision (section 777) does not negate the fact the other counts constituting criminal behavior should have been held to the reasonable doubt standard. The prosecution should not be able to manipulate pleadings in order to obtain a lower burden of proof.
The evidentiary standard of beyond a reasonable doubt is a vital element of due process when adjudicating criminal activity. The United States Supreme Court held in In re Winship that when juveniles are charged with criminal offenses they should be afforded the standard of proof beyond a reasonable doubt, which is an integral component of due process.[6] If the prosecution here brought these charges under the correct statutory provision, then the prosecution would be required to meet the higher evidentiary burden. In the *889 Winship case, the Supreme Court explained the minor there faced a potential loss of liberty in the form of a placement in the California Youth Authority. In the case before this court, appellant is faced with the same confinement in the same facility and for the same reason is entitled to the reasonable doubt standard of proof.
Even assuming conduct amounting to a criminal offense could be pursued under amended section 777, proof of these charges should still be held to the evidentiary standard of beyond a reasonable doubt. As was held in In re Francis W., "[A] supplementary petition charges acts which, if they were charged in an original petition, would require these protections and would constitute a crime if committed by an adult, ... and the disposition results in a substantially more restrictive punishment."[7] According to section 701, charges brought in the original petition must be tried under the standard of beyond a reasonable doubt. The Francis court held a supplemental petition alleging criminal offenses should be treated in the same way as an original petition, and the prosecution should be held to the demanding standard of beyond a reasonable doubt.[8] Therefore, the charges alleged in the supplemental petition of this case should have been held to proof beyond a reasonable doubt.
In In re Arthur N., the California Supreme Court held a reasonable doubt standard is to be afforded to minors when they are charged with "acts of misconduct or crimes" in a supplemental petition seeking to impose more restrictive confinement.[9] In the instant case, conduct charged against appellant amounted to allegations of new criminal offenses not included in the original petition. Therefore, under In re Arthur N., the proper evidentiary standard the trial court should have applied is proof beyond a reasonable doubt. The Arthur N. court specifically made this standard of proof applicable to new criminal acts or even charged misconduct not included in the original petition. The Supreme Court highlighted the potential consequences of a true finding on these supplemental allegations, especially the possible commitment to the Youth Authority. It is true the Arthur N. case was decided before the amendment of section 726.[10] But this does not alter the fact the appellant still faces a serious loss of liberty if committed to the California Youth Authority because of the criminal acts alleged in the supplemental petition. Consequently, he should be afforded the due process rights the Supreme Court recognized in Arthur N.
While I believe the trial court erred for the above reasons, in the unique context of this case, I conclude the error was harmless. Each count the court sustained was proved by extensive eyewitness testimony. The witnesses who testified in support of the counts charged were all authority figures actually involved in the disturbances involving the appellant. They are probation officers working at the camp to which appellant was previously committed. Because these criminal acts and misconduct *890 were committed in front of numerous individuals and because the witnesses' direct and largely unchallenged testimony provided overwhelming evidence of guilt, it is clear that if the proper evidentiary standard had been applied the prosecution would have more than met its burden. Consequently, I concur in the judgment.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code except where otherwise indicated.
[2] Proposition 21 replaced former section 777's requirement of a supplemental petition with a noticed hearing procedure. (§ 777, subd.(a).) The filing of a "petition" rather than a "notice" by the probation officer in this case apparently resulted from use of an outdated form.
[3] Both the conduct underlying Eddie M.'s most recent wardship determination (the controlled substance offenses) and the conduct leading to modification of the placement order occurred after the March 8, 2000 effective date of Proposition 21. Accordingly, this case does not raise the ex post facto issue currently before the Supreme Court in John L. v. Superior Court, review granted July 18, 2001, S098158 (does prohibition of ex post facto laws prelude application of amended section 777 where the conduct underlying the wardship determination occurred before the amendments but the conduct leading to revocation of juvenile probation occurred after the effective date of the amendments).
[4] The statute provided that all supplemental petitions were to be filed by the juvenile's probation officer. (Stats.1971, ch. 641, § 6, p. 1263.) In 1977 the Legislature amended this portion of former section 777 to provide that the supplemental petition was to be filed by the probation officer if the child had been adjudicated a ward of the court under section 601 and by the prosecuting attorney at the request of the probation officer when the child had been determined a ward under section 602. (Stats.1977, ch. 1241, § 9, pp. 4184-4185.)
[5] In distinguishing the consequences of sustaining a supplemental petition under former section 777 from those resulting from adult probation revocation proceedings, the Court also emphasized that confinement at CYA is "not limited to a period that is proportionate to the original act or acts of misconduct or criminal behavior upon which jurisdiction over the minor was first asserted." (In re Arthur N., supra, 16 Cal.3d at pp. 238-239, 127 Cal.Rptr. 641, 545 P.2d 1345.)
[6] All subsequent references to a rule or rules are to the California Rules of Court.
[7] Section 601 authorizes the juvenile court to adjudge a child to be a ward of the court based upon his or her habitual refusal to obey reasonable and proper directions of a parent or guardian, curfew violations or persistent truancy.
[8] Section 602 authorizes the juvenile court to adjudge a child to be a ward of the court if he or she has committed a criminal offense while under the age of 18.
[9] In 1989 former section 777 was amended once again to provide that the supplemental petition could be filed "[b]y the probation officer or the prosecuting attorney, after consulting with the probation officer, if the minor is a court ward or probationer under Section 602 in the original matter and the supplemental petition alleges a violation of a condition of probation not amounting to a crime." If, however, "the petition alleges a violation of a condition of probation amounting to a crime," the petition could still only be filed by "the prosecuting attorney, after consultation with the probation officer." (Stats. 1989, ch. 1117, § 18, p. 4127.)
[10] Procedures for hearings pursuant to section 777 are now described in rule 1433, which provides in part "(a) [Notice of hearing] Notice of a hearing to be held under section 777 shall be prepared: [¶] (1) By the probation officer if the child has been declared a ward under section 601; or [¶] (2) By the probation officer or the district attorney if the child is a ward or is on probation under section 602, and the alleged violation of probation is not a crime." Rule 1433(f)(1) authorizes the juvenile court to admit and consider reliable hearsay evidence at the hearing. Rule 1433(f)(2) provides that the standard of proof for the alleged violation is preponderance of the evidence.
[11] The notice must contain "a concise statement of facts." (§ 777, subd. (a)(2).)
[12] Under former section 777, the People could not use hearsay to prove the additional acts of misconduct. (In re Antonio A. (1990) 225 Cal.App.3d 700, 703-706, 275 Cal.Rptr. 482.)
[13] Proposition 21 derived from two unsuccessful pieces of legislation, Senate Bill No. 1455 and Assembly Bill No. 1735 (1997-1998 Reg. Sess.). (See People v. Arroyas (2002) 96 Cal.App.4th 1439, 1447, 118 Cal.Rptr.2d 380.) The two bills' proposed changes to section 777 are identical to those effected by Proposition 21. An analysis of Senate Bill No. 1455 by the Senate Subcommittee on Juvenile Justice confirms the purpose of the legislation to "reduce the requirements" for revoking probation and to conform the procedures for juvenile probation revocation hearings to those in place in the adult criminal justice system.
[14] Marcus A.'s original wardship adjudication was based on his admission in 1998 of one count of grand theft. (In re Marcus A., supra, 91 Cal.App.4th at p. 425, 109 Cal. Rptr.2d 919.) Subsequent section 602 wardship petitions had also been also sustained in 1998 and 1999 based on his admissions that he received stolen property and had committed an assault by means likely to produce great bodily injury. (Id. at pp. 425-426, 109 Cal.Rptr.2d 919.)
[15] The People conceded in Marcus A. that the juvenile court had erred in proceeding under amended section 777 with respect to an alleged violation of a condition of probation that could have been charged as a criminal offense. (In re Marcus A., supra, 91 Cal. App.4th at p. 426, 109 Cal.Rptr.2d 919.) In the instant case, the People also accept the reasoning of Marcus A., arguing only that Eddie M. was properly found in violation of probation based on incident No. 3, his refusal to stop reading after "lights out," and that his commitment to the CYA was proper based on that violation alone. However, in a brief on the merits filed in In re Samuel J., S102634, review dismissed June 12, 2002, prior to the Supreme Court's dismissal of that case, the People announced they have "reconsidered the issue. We conclude the voters did not intend that a violation of probation could not be based upon commission of a criminal act."
[16] The court in Marcus A. itself acknowledged this dichotomy, "Prior to the passage of Proposition 21, section 777 outlined two categories of misconduct, that which amounted to a crime and that which did not. [Citation.]" (In re Marcus A., supra, 91 Cal.App.4th at p. 426, 109 Cal.Rptr.2d 919.)
[17] If the only condition of probation that the juvenile has violated is that he or she "obey all laws," a new petition under section 602, not notice of a section 777 hearing, must be used to seek a more restrictive placement based on the subsequent misconduct amounting to a crime. When, as in the instant case, however, the violation of additional conditions has been alleged (e.g., that the child failed to obey instructions of probation staff or violated placement rules) and the alleged misconduct is not the actual commission of a new crime, inclusion of a formal allegation that the juvenile failed to obey all laws affects no substantial rights and is, at most, harmless error.
[18] As previously discussed, Proposition 21's relaxation of the evidentiary requirements in section 777 hearings includes a direct reference to adult probation revocation hearings as its model. (§ 777, subd. (c).)
[19] Penal Code section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."
[1] Proposition 21 amended section 777, subdivision (a)(2) to specifically strike the provision applicable to violations of probation involving criminal offenses and to leave the provision applicable to violations of probation not amounting to a crime. Amended section 777, subdivision (c) provides the proper evidentiary burden for sustaining petitions under this section, which is by a preponderance of the evidence.
[2] All further statutory references are to the Welfare and Institutions Code.
[3] In re Marcus A. (2001) 91 Cal.App.4th 423, 427, 109 Cal.Rptr.2d 919.
[4] In re Marcus A., supra, 91 Cal.App.4th at page 427, 109 Cal.Rptr.2d 919.
[5] In re Marcus A., supra, 91 Cal.App.4th at page 426, 109 Cal.Rptr.2d 919.
[6] In re Winship (1970) 397 U.S. 358, 365-366, 90 S.Ct. 1068, 25 L.Ed.2d 368.
[7] In re Francis W. (1974) 42 Cal.App.3d 892, 898, 117 Cal.Rptr. 277, citing In re Winship (1970) 397 U.S. at page 368, 90 S.Ct. 1068.
[8] In re Francis W., supra, 42 Cal.App.3d at page 898, 117 Cal.Rptr. 277.
[9] In re Arthur N. (1976) 16 Cal.3d 226, 240, 127 Cal.Rptr. 641, 545 P.2d 1345.
[10] Section 726, subdivision (c) states "the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (§ 726, subd. (c).)